UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN WILLIAM CASSADAY,

              Plaintiff,                      Case No. 1:25-cv-13074

v.                                     Honorable Thomas L. Ludington
                                     United States District Judge

DONALD J. TRUMP,

              Defendant.

_____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT AND WARNING OF SANCTIONS**

Plaintiff Kevin William Cassaday, proceeding *pro se* and *in forma pauperis* (IFP), filed this civil rights action on September 26, 2025, against President Donald J. Trump. Plaintiff sues President Trump in his official capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and seeks $40 trillion in damages, among other relief.

Due to Plaintiff's IFP status, his *pro se* Complaint is subject to preliminary screening. Plaintiff's Complaint does not survive this screening. Thus, Plaintiff's Complaint will be dismissed. And because no appeal can be taken in good faith, his ability to proceed IFP on appeal will be denied.

**I.**

On September 26, 2025, Plaintiff Kevin William Cassaday filed a *pro se* civil rights Complaint. ECF No. 1. He alleges that President Donald Trump has "waged war against the United States, projecting claims against any of his foes of his choosing" and "[sent] troops onto U.S. soil to enforce his rule of law outside the bounds of powers prescribed by Congress." *Id.* at PageID.4. He also says that Defendant is "[i]mposing tariffs in violation of the Congressional laws as a back

door tax on Americans to cover up the 'Big Beautiful Bill.'" *Id.* He also alleges that Defendant incited an "[i]nsurrection against" Congress on January 6, 2021. *Id.* That Defendant "[violates] the Constitution on a daily basis…to delude his followers into whitewashed ideology." *Id.* That Defendant "has a mental disease or defect that renders his occupation of the Oval Office a threat to Democracy…the integrity [and] sanity of America." *Id.* Finally, Plaintiff alleges that President Trump is currently "staging a coup against the United States, habitually lying about the truth [and] using Social Media" to "bolster those falsehoods" so "individuals cannot decipher the truth." *Id.*

Based on these allegations, Plaintiff sues President Trump, asserting unclear claims against him under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.* at PageID.3. As relief, Plaintiff seeks (1) "emergency consideration", (2) $40,000,000,000,000 in damages, (3) injunctive relief against President Trump's alleged "continually vile . . . targeting of the Left or [Anti-Fascist] groups" that oppose him," and (4) seemingly a declaration that "[t]he tariffs imposed by [Defendant] are in direct violation of the powers given solely to Congress." *Id.* at PageID.5.

The same day he sued Plaintiff Trump, Plaintiff applied to proceed *in forma pauperis* (IFP). ECF No. 2. Plaintiff's IFP Application was granted on October 17, 2025. ECF No. 4.

## II.

Because Plaintiff proceeds IFP, Plaintiff's Complaint is subject to preliminary screening. Courts should dismiss an IFP complaint before service if the complaint is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c).

A complaint is frivolous if it lacks any arguable basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). And a

complaint fails to state a claim if, even when construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), it does not include "a short and plain statement of the claim" showing entitlement to relief and "a demand for the relief sought[.]" *See* FED. R. CIV. P. 8. Bare "labels and conclusions" or "naked assertions" are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 679 (2007). Instead, the complaint must include sufficient factual allegations to push its claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.

Plaintiff's claims must be summarily dismissed. Indeed, this Court lacks subject matter jurisdiction over his claims because sovereign immunity bars them.

At English common law, the doctrine of sovereign immunity barred lawsuits against the Crown. *Welch v. Tennessee Valley Auth.*, 108 F.2d 95, 99 (6th Cir. 1939). This doctrine rested on the notion that, as the supreme political sovereign, "the King can do no wrong." *Duncan v. Peck*, 844 F.2d 1261, 1264 (6th Cir. 1988). That is, as a juridical matter, "it would be a contradiction to allow him to be sued as of rights in his own courts," when no political sovereign could enforce a judgment against the Crown. *Id.* (citing W. PROSSER AND W. KEETON, *The Law of Torts*, § 131 (5th Ed. 1984)).

Although mechanically different than the English monarchical tradition, the American Republic assumed the doctrine of sovereign immunity, both for "the States and the Federal Government." *Ernst v. Rising*, 471 F.3d 351 (6th Cir. 2005) (en banc). Relevant here, for the Federal Government, the architecture of the United States Constitution yields this immunity "from the nature of sovereignty itself." *Id.* (citing *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 388 (1939)). Indeed, the ultimate political sovereign—the People—created the United States as the federal sovereign government, delegating it certain authority to govern. *See United States v.*

*Lee*, 106 U.S. 196, 205–09 (1882) (explaining federal sovereign immunity's development while reiterating "[u]nder our system, the *people*" are the ultimate political sovereign (emphasis in original)). In so doing, they necessarily vested the United States with the essential attributes of government sovereignty, including immunity from unconsented judicial compulsion. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Still, the People retained control over the extent to which the United States government may be sued and exercise that control through Congress, which may waive the United States's immunity. *Id.*; *see also Lane v. Pena*, 518 U.S. 187, 192 (1996).

Flowing from those doctrinal principles is a clear legal framework. Because of its sovereign immunity, the United States may not be sued without Congress's consent. *Muniz-Muniz v. United States Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). Absent that consent, a court lacks subject matter jurisdiction over claims against the United States. *Id.* This immunity extends to federal officials sued in their official capacity, as opposed to their individual capacity, because such suits are functionally against the United States itself. *Poffenbarger v. Kendall*, 137 F.4th 563, 567 (6th Cir. 2025). When Congress waives the United States's immunity for a particular type of suit or claim, the waiver "must be unequivocally expressed in statutory text." *Lane*, 518 U.S. at 192. And this framework applies regardless of the type of relief a plaintiff seeks. *See United States v. City of Detroit*, 329 F.3d 515, 520–21 (6th Cir. 2003) (en banc) (applying this federal sovereign immunity and waiver framework to the Administrative Procedure Act's (APA), 5 U.S.C. § 702, general immunity waiver for cases seeking nonmonetary against the United States under a statutory cause of action); *see also Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 425–26 (6th Cir. 2016) (discussing the framework for both monetary and nonmonetary remedies).

Here, federal sovereign immunity bars Plaintiff's claims. To that end, he asserts *Bivens* claims against President Trump in his official capacity, thus suing the United States itself.[1] *Poffenbarger*, 137 F.4th at 567. And because Congress has not waived the United States's immunity for "a *Bivens*-type action" like Plaintiff's, sovereign immunity applies, depriving this Court of jurisdiction over Plaintiff's claims.[2] *Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348, 1352 (6th Cir. 1989). Thus, Plaintiff's Complaint, ECF No. 1, will be dismissed.

## IV.

This Court must make one final observation. This is not Plaintiff's first filing that has been summarily dismissed. In addition to this case, he has three others pending here: *Cassaday v. State of Michigan*, No. 1:25-cv-12576; *Cassaday v. United States District Court for the Western District of Michigan*, No. 1:25-cv-13076; and *Cassaday v. Trump, et. al.,* No. 1:25-cv-13075. Contemporaneously with this case, *Cassaday v. United States District Court for the Western District of Michigan*, No. 1:25-cv-13076 and *Cassaday v. Trump, et. al.,* No. 1:25-cv-13075, will be summarily dismissed.

Nor are these isolated incidents. Plaintiff has filed and had dismissed numerous other actions across this District for frivolousness, failure to state a claim, immunity, or procedural default. *See, e.g.*, *Cassaday v. State of Michigan*, No. 1:25-cv-10419; *Cassaday v. Federal Defender's Office*, No. 1:22-cv-10801; *Cassaday v. Verizon Media Inc.*, No. 1:25-cv-10276;

---

[1] Even if Plaintiff sued President Trump in his individual capacity, President Trump is entitled to absolute presidential immunity from civil liability, further barring Plaintiff's claims. *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).

[2] Not to mention, even if sovereign immunity did not apply, *Bivens* only supports narrow, implied causes of action for damages against federal agents in their individual capacities—not implied causes of action against the United States or its agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 (1994).

*Cassaday v. Dow Chemical Co.*, No. 1:22-cv-11555; *Cassaday v. FBI*, No. 4:22-cv-10909 (E.D. Mich.). Notably, several of those actions raise similar claims to the ones Plaintiff brought here.

Magistrate Judge Patricia T. Morris has already warned Plaintiff that this conduct cannot be tolerated; time spent on these cases means that much less time can be spent addressing other litigants' cases that seek relief from this Court. *Cassaday v. Verizon Media Inc.*, No. 1:25-CV-10276, 2025 WL 763571, at *2 (E.D. Mich. Feb. 10, 2025), *R&R adopted*, No. 1:25-CV-10276, 2025 WL 636320 (E.D. Mich. Feb. 27, 2025). Judge Morris detailed his extensive history of vexatious and meritless filings—17 in a single month in the Western District of Michigan—and his subsequent threats against federal judges after dismissal. *Id.* (citing *See United States v. Cassaday*, No. 1:23-cr-00043 (W.D. Mich.) (threatening to "get [his] guns" and "have a party" with a judge). And Judge Morris cautioned that further vexatious filings could result in sanctions, including pre-filing restrictions. *Id.*

Stemming from Civil Rule 11, district courts possess the authority to sanction bad-faith conduct and to enjoin vexatious litigants from further abuse. *See United States ex rel. Odish*, 843 F. App'x 748, 750 (6th Cir. 2021) (per curiam); *see also Gray v. United States*, No. 23-3723, 2025 WL 40818, at *2 (6th Cir. Jan. 3, 2025) ("A district court has discretion to impose prefiling restrictions on a party with a track record of repetitive or vexatious litigation."); *Clemons v. DeWine*, No. 19-3033, 2019 WL 7567197, at *3 (6th Cir. May 1, 2019); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). While no sanction issues today, the record leaves little doubt that Plaintiff's filings are vexatious. He is now expressly warned: continued submission of frivolous or duplicative lawsuits will result in an order barring further filings without prior leave of court.

**V.**

- 6 -

Accordingly, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED.**

Further, it is **ORDERED** that Plaintiff's ability to proceed *in forma pauperis* on appeal is

**DENIED.**

**This is a final order and closes this case.**

Dated: October 24, 2025                          s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge